

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SYL JOHNSON a/k/a Sylvester Thompson d/b/a Syl-Zel Music and Twinight Records Plaintiff, | ) ) ) ) Case No. |
| v. | ) ) Jury Trial Demanded |
| UMG RECORDINGS, INC., a Delaware Corporation as successor by merger to MCA Records, Inc., individually, and d/b/a Geffen Records, MCA Records, UMe, UMD, and Respect The Classics, Defendant. | ) ) ) ) ) ) ) |

## COMPLAINT

SYL JOHNSON a/k/a SYLVESTER THOMPSON d/b/a Syl-Zel Music, Plaintiff herein ("Johnson"), sets forth his Complaint against UMG RECORDINGS, INC., a Delaware corporation, as successor by merger of MCA Records, Inc., Defendant herein ("UMG" or "Defendant") and states as follows:

### I. NATURE OF THE CASE

1. This civil diversity action seeks damages and injunctive relief for intentional acts of transferring portions of Johnson's pre-1972 sound recording, "I Feel An Urge," onto the UMG' sound recording, titled variously as "Know the Ledge," "Juice" and "Juice (Know the Ledge)," without Johnson's consent. UMG' sound recording was placed on various Products, including movie soundtracks, music albums (on CDs, Cassettes, Vinyl Records), video games (and other products) ("Juice Products"). From approximately 1991 through 2017, Defendant UMG Recordings, Inc. ("UMG") sold and shipped Juice Products with mislabeled and misappropriated content to Illinois. Despite the lawsuit filed in Illinois, Case No. 15-cv-3928 filed in the Northern District of Illinois Eastern Division, Defendant UMG continues to sell, ship

1

and distribute (through its distribution company—UMG Commercial Services, Inc.a/k/a Universal Music Distribution (UMD), Universal Music Enterprises (UME), its centralized U.S. catalog special markets division working in concert with its record labels, Geffen Records, and "Respect The Classics" online Store.) the Juice Products in Tennessee, Illinois and in other States.

## Federal Copyright Law Inapplicable

2. The Copyright Act of 1976, 17 U.S.C. §101, et seq., as amended, forms the primary basis of federal copyright protection law in the United States. The 1976 Act became effective on January 1, 1978 and spells out basic rights of copyright holders, codifies the doctrine of "fair use," and for most new copyrights adopted a unitary term based on the date of the author's death rather than the prior scheme of fixed initial and renewal terms. The 1976 Act specifically provides that pre-1972 Recordings will not be subject to the federal copyright scheme and that States retain the right to protect Pre-1972 works, including sound recordings. Section 301(c) provides that "any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067." 17 U.S.C. §301(c). Nothing in the 1976 Act permits other artists, music labels, music publishers, music distributors or other similar entities to make use of pre-1972 Sound Recordings without compensation.

## Tennessee Common Law of "Property" and "Tort" for Pre-1972

3. Tennessee common law protects Pre-1972 Sound Recordings. Through the enactment of criminal statutes, Tennessee has declared a strong public policy against the conduct complained of herein, and Tennessee criminal law prohibits the unauthorized copying of sound

2

Case 3:17-cv-01548   Document 1   Filed 12/12/17   Page 2 of 20 PageID #: 2

recordings for profit, specifically, from being transferred without the consent of the owner. Tennessee Code 39-14-139, 140 [Acts 1989, ch. 591, § 1; 1990, ch. 1000, §§ 1-4; 2009, ch. 408, §§2-3.]

4. Civilly, Tennessee courts enforce the unauthorized copying of music through the intentional tort of misappropriation. Under Tennessee law, the intentional tort of misappropriation does not require that the original and accused products be in direct competition. Tenn. Code Ann. § 47–25–1701.

## II. PARTIES

### Plaintiff Syl Johnson a/k/a Sylvester Thompson d/b/a Syl-Zel Music

5. Syl Johnson a/k/a Sylvester Thompson is a Chicago resident and citizen of Illinois. Johnson is a legendary Chicago rhythm and blues ("R&B") musician who recorded hit songs in the 1960s and 1970s. Johnson is currently engaged in the business of musical composition and publishing and operates Syl-Zel Music, a music publishing company. Johnson also is currently engaged in the business of recording, manufacturing, distributing, licensing, and sale of sound recordings and operates Twinight Records. Johnson is vocalist, guitarist, and band leader in the sound recording of "I Feel An Urge." Johnson has the legal right to protect rights arising therefrom, including the right to license samples, collect royalties, make and sell reproductions, and to sell copies of the recording and publicly perform it. Johnson conducts business and business transactions in the State of Tennessee through Tennessee businesses that include and are not limited to: Broadcast Music Inc. (Nashville, TN) and Royal Studios (Memphis, TN).

### Defendant UMG Recordings, Inc.

6. UMG Recordings, Inc., (a successor to Universal Records, Inc. and a successor to

MCA Records, Inc.), is a Delaware corporation with its principal place of business at 2220 Colorado Avenue, Santa Monica, California 90404 ("UMG"). UMG is registered to do business in Tennessee with the Tennessee Secretary of State, and maintains a registered agent for service of process at C T Corporation System, STE 2021, 800 S. Gay St., Knoxville, TN 37929-9710. UMG Recordings, Inc. is the current parent company of its subsidiary companies Mercury Records, located at 60 MusicSquare East, Nashville, Tennessee 37203, the Universal Music Publishing Group at 1904 Adelica Street, Nashville, Tennessee 37212, and Universal Music Group Nashville at 401 Commerce Street, Suite #1100, Nashville, Tennessee 37219. UMG is currently engaged in the business of recording, manufacturing, distributing, publishing, licensing, and sale of sound recordings and operates as "Geffen Records" and "MCA Records", " Universal Music Enterprise (UMe)", " Universal Music Distribution (UMD)", and "Respect The Classics". UMG advertised, sold, and shipped the "Juice" and "Know The Ledge" sound recordings with "My Play Direct" located at 468 McNally Drive, Nashville TN 37211 from 2015-2017 and to present.

### III. JURISDICTION AND VENUE

#### Subject Matter Jurisdiction

8. This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between the Plaintiff who is an Illinois citizen and resident, and UMG, a corporation incorporated in Delaware and having a principal place of business in California.

#### Personal Jurisdiction Over The Parties

9. **Plaintiff Johnson.** This Court has personal jurisdiction of Plaintiff Johnson because Plaintiff Johnson conducts business in the State of Tennessee, and submits to this Court's personal jurisdiction.

10. **Defendant UMG.** UMG is amenable to suit in a Tennessee court under Tennessee's Long-Arm Statute, Tenn. Code Ann. §§ 20-2-201, 202, 221, 223, 224, 225 by the commission of intentional torts in Tennessee; and in that UMG established minimum due process contacts with Tennessee through its 1991-2017 sales of Juice Products in Illinois[1] as reflected on an annual basis on Exhibit 1 (attached) together with UMG's shipments of Juice Products to Illinois, Tennessee, and in other states by negotiated arrangements with distributors and retailers located in Tennessee to distribute, advertise, and/or sell its products in Illinois, Tennessee, and in other states such that UMG should reasonably anticipate being hauled into court in Tennessee regarding injury inflicted by virtue of its sales as set forth in the paragraphs below.

## Background Facts

11. Between 1991 and present, UMG has been and is engaged in the business of the creation, manufacture, distribution, advertising, and sale of sound recordings. Between 1991 and present, UMG has relied and relies on negotiated agreements with its artists for the creation of music. Between 1991 and present, UMG has relied and relies on negotiated agreements with its companies and affiliated entities for the manufacturing, distribution, advertising, and sale of its music.

12. Between 1991 and the date of filing this lawsuit, UMG's distributor, Universal Music Group Distribution, Corp. a/k/a Universal Music Distribution (UMD) was registered and authorized to do business in Tennessee and maintains and operates business at 401 Commerce Street, Suite #1000, Nashville, Tennessee and distributed UMG's sound recording products in Tennessee pursuant to a negotiated arrangement with UMG.

## Tennessee Long-Arm Statute -2-201, 202, 221, 223-225

---

[1] Complete listing of Juice Products sold between 1991 and 2017 attached as **Exhibit No. 4 and 5.**

13. Defendant UMG has submitted to specific personal jurisdiction in Tennessee's pursuant to Title 20, Chapter 2, Part 2 of the Tennessee Code of Civil Procedure by commission of tortious acts within Tennessee by shipping Juice Products into Tennessee, Illinois, and in other states for resale.

14. UMG has submitted to specific personal jurisdiction in Tennessee pursuant to Chapter 2, Part 2 of Tennessee's Long-Arm Statute, Tenn. Code Ann. §§ 20-2-201, 202, 221, 223, 224, 225 by commission of tortious acts within Tennessee which arise out of UMG's Tennessee and Illinois sales.

15. Johnson's cause of action for the intentional tort of misappropriation arose out of or relates to contacts UMG created in Tennessee by UMG's shipments and sales of Juice Products to distributors or retailers located in Tennessee then not pay Johnson a licensing fee that he was due for the Johnson Sample.

16. By these sales and shipments, UMG has purposefully availed itself of Tennessee's system of laws, infrastructure, and business climate.

17. From at least 1991 to 2017, UMG has continuously and deliberately made sales in Tennessee which are not random or fortuitous and has profited from the Tennessee market for the Juice Products. Requiring UMG to defend this lawsuit in Tennessee meets minimum due process requirements since through shipping Juice Products to Tennessee and making sales and authorizing its distributor to distribute the Juice Products in Tennessee, UMG has and continues to profit.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (b)(3) in that a substantial part of the acts and omissions giving rise to Johnson's claims occurred in this District.

## IV. FACTS CONCERNING THE SOUND RECORDINGS

19. In 1968, at a studio in downtown Chicago, with Armstead's permission, Johnson produced, sang, recorded and released a rendition of the 1967 song "I Feel An Urge Coming On," utilizing the R&B genre style of music. Johnson re-titled his R&B sound recording performance to "I Feel An Urge."

### JOHNSON'S SONG - "I FEEL AN URGE"

20. In approximately 1967, Josephine Armstead ("Armstead"), and Milton Middlebrook ("Middlebrook") produced and composed the song entitled "I Feel An Urge Coming On." On August 4, 1967, "I Feel An Urge Coming On" was registered with the United States Copyright Office with Registration No. EU0000009649. The copyright claimant was Colfam Music Inc., signed by Melvin L. Collins, the husband of Armstead ("Collins"). On November 13, 1996, the registration with the United States Copyright Office for "I Feel An Urge Coming On" was renewed with Registration No. RE0000738233. The copyright claimant is Armstead. In approximately 1967, Armstead recorded the song "I Feel An Urge Coming On" utilizing a "soul" genre style of music.

21. In approximately 1968, Johnson contacted Armstead and sought and received permission to record a different rendition of "I Feel An Urge Coming On."

22. The musicians that Johnson hired for "I Feel An Urge" were John Cameron (tenor saxophone), Johnson (guitar), George Moss (drums), John Zachary (bass guitar), Willie Henderson (baritone saxophone), Raymond Orr (trumpet), Murray Watson (trumpet), John Meges (alto saxophone), and Harvey Burton (trombone). Johnson produced a 45-RPM vinyl record which gives credit to Armstead on the label.

23. The song "I Feel An Urge" follows a common song structure as follows: Intro -

Chorus - Verse - Bridge - Chorus - Verse – Chorus - Outro. The Bridge, (sometimes referred to as a "breakdown") is usually an instrumental device in a song that "breaks down" the repetitive pattern between a song's Verse and Chorus. Within Syl Johnson's "I Feel An Urge" sound recording, the Bridge acts as a connection point and a separation point. When Syl's distinctive vocal "Ohh" is heard, a fast paced drum roll follows. The vocals thus connect to the Bridge of the song. Following the first vocal, the Bridge proceeds with an instrumental guitar rhythm played over a spread out drum pattern, followed by a high note played on a saxophone. Johnson's voice is then heard completing the progression by singing the word "Yeah." The Bridge consequently and uniquely begins and ends with Johnson's distinctive vocals: Begins = "Ohh" and Ends = "Yeah" at the end of separate melody patterns. The 3.094 portion that UMG caused to be transferred onto its sound recording thus includes Syl Johnson's distinctive vocals and unique guitar work, the signature drum progression played by Syl Johnson's drummer, George Moss, and the saxophone part played by Syl Johnson's musician, John Cameron.[2]

24. Between 1967 and 1982, nineteen of Syl Johnson's recordings have ranked on the famous Billboard Music Charts. In 2011, Syl Johnson's his name gained additional notoriety after his compilation album "Syl Johnson: Complete Mythology" (produced by The Numero Group) was nominated for two Grammy Awards (Best Historical Album & Best Album Notes). In 2015, a documentary depicting Syl Johnson's musical career ("Any Way The Wind Blows") was released at the Chicago International Film Festival. Johnson is well known for hits such as "Come On Sock It To Me" in 1967 and "Different Strokes" in 1968 and others.

25. Since the 1980's, Syl Johnson made his music available for licensing through an attorney, Deborah Manus Gardner, who cleared and licensed samples of Johnson's music. After Deborah Manus Gardner, Syl Johnson hired another attorney, Linda Mensch, who was

---
[2] Photographs of digital and data analysis of "I Feel An Urge" by Syl Johnson attached as **Exhibit No. 3.**

responsible to clear and license samples of Johnson's music.

26. Syl Johnson's recording "I Feel An Urge" was issued, released and distributed by the Chicago-based independent label Twinight Records in 1968. In 2011 and 2015, the independent Chicago-based label, The Numero Group, reissued Johnson's 1968 recording "I Feel An Urge" (with Johnson's permission) on vinyl, compact disc and digital formats. The digital formats of "I Feel An Urge" that are credited to Johnson and The Numero Group are sold by major internet distributors that include Amazon.com, Juno.co.uk and Microsoft.com.

## DIGITAL SAMPLING TECHNOLOGY

27. Digital sampling technology allows the copying of a recorded sound or series of sounds and incorporation of the fragment into the new work.

28. The process of digital recording changes sound waves into digital information; specifically, a sound is sent to a transducer (such as a microphone) which converts the sound wave into voltage variations. The signal is then sent to an analog-to-digital converter. The converter changes the analog signal into digital information by first measuring the analog voltage at regular intervals. The resulting "bits" are assigned a binary number representing the intensity of the signal at that time. A computer stores or processes the resulting sample information. To hear the sample, the process is reversed so that the voltage variations are converted into audible sound waves.

29. The process whereby music samples are misappropriated and recorded onto the defendant's work requires that the defendant first make a sound recording, then intentionally and deliberately record the music sample onto the defendant's sound recording. In some cases, the music sample is manipulated by slowing it down, changing the pitch, and then splitting it or otherwise modulating it. The sampler thereby achieves distinction in the defendant's sound

recording without having to spend the resources on creativity to develop the distinctive sound.

## ROLE OF SAMPLING IN RAP MUSIC

30. The "rap" music genre differs from the R&B music genre popular in the 1960s and 1970s. The "rap" style of music typically consists of textual themes related to the difficulty of modern urban living and typically includes musical materials developed in an earlier music era such as R&B. Music sampling from an earlier artist is recorded onto the "rap" sound recording and interpreted throughout the "rap" work as a subliminal text or background message. In "rap" sampling, the sound quality in the older analog recordings can be juxtaposed against the digital sound. The sum of these techniques is typically to introduce a background element of nostalgia to dramatize and provide distinction to the sound recording.

## "KNOW THE LEDGE" – MOTION PICTURE SOUNDTRACK ALBUM

31. UMG's two sound recordings, Juice (Know The Ledge) and Know The Ledge are identical, with the exception that Know The Ledge has a different "outro" shortened by approximately 3 seconds (hereafter both sound recordings are referred to as "Juice").

32. UMG's' "Juice" sound recordings contain virtually no original music. In addition to the Johnson Sample, the "Juice" sound recordings include a bass line taken without credit given from Nat Adderley's sound recording, "Rise, Sally Rise" and also a drum instrumental taken from Artist Billy Cobham's sound recording, "The Pleasant Pheasant."

33. UMG created music and sound recordings through its artist, Eric Barrier p/k/a Eric B. ("Eric B."). Eric B. had a contract with MCA Records, Inc. (i.e., UMG) to engage in the business of recording, sampling, and performing music. Eric B. was one of the hip-hop duo "Eric B. and Rakim." In approximately 1991, while under contract as set forth above, Eric B. recorded and performed the Juice sound recording.

34. UMG created music and sound recordings through its artist, William Griffin p/k/a Rakim. ("Rakim"). Rakim had a contract with MCA Records, Inc. (i.e., UMG) to engage in the business of writing, recording, sampling and performing music. Rakim was one of the hip-hop duo "Eric B. and Rakim." Rakim wrote, compiled the sampled music, and performed the Juice sound recording.

35. In a 2006 audio interview, Rakim openly admitted having and using a sampled bass line and drums to compose the verses to "Juice." On information and belief, Rakim copied the 3.094 second portion of Johnson's sound recording and utilized it for the chorus in the "Juice" sound recordings. By a process of digital manipulation, the Johnson Sample was manipulated and sliced, and the 3.094 second portion copied from "I Feel An Urge" was utilized as the Case: Chorus in Juice and in portions of the Verse. The 3.094 second sample of "I Feel An Urge" was severed into three separate sections for use in "Juice." In total, these three separate sections were repeated fifty-four (54) times throughout the entirety of "Juice."

36. The 3.094 second portion copied from "I Feel An Urge" comprises approximately 25% of the Juice sound recordings. The three separate samples taken from "I Feel An Urge" are identified as: (A) Syl Johnson vocals "Ohh" followed by Moss' signature drum roll; (B) Syl Johnson's guitar melody-Moss' drum rhythm-Cameron saxophone note/Johnson vocal "Yeah;" (C) Cameron saxophone note/Johnson vocal "Yeah." Section A is used in twenty-nine (29) separate locations of the length duration of "Juice." Section B is used during the Chorus and Verse sections of "Juice" in eight separate locations of the length duration of "Juice (Know The Ledge)." Section C was used during the Chorus and Verse sections in 17 separate locations of the length duration of "Juice."[3]

---

[3] Photograph of digital and data analysis of the song "Juice (Know The Ledge)" by Eric B. & Rakim attached as **Exhibit No. 3.**

37. A "hook" is a musical idea, often a short riff, passage, or phrase that is used in popular music to make a song appealing and to "catch the ear of the listener." The sensational introductory "hook" of "Juice" has been explained and cited for its popularity within published news articles created between 1992 and 2017. The "hook" is comprised of Section A of the Johnson Sample (i.e. Johnson's vocals followed by Moss' signature drum roll) together with a sample from another artist's bass line) within the first two seconds of the "Juice" sound recordings. The introductory section of "Juice" is an essential portion of the song as it opens with intense audio detail to entice and interest the listener. Johnson's vocal "Ohh" was strategically placed between a strong bass-line (which UMG's sampled from the 1968 sound recording of Nat Adderley without providing credit). Section B of the Johnson Sample is played four times consecutively throughout the first Chorus of "Juice" while it is played an additional thirteen times throughout the Verses of "Juice." Section C is used separately as an introduction and closing section in eight locations of the Chorus and Verses of "Juice."

38. The split sample was repeated at specific intervals in the "Juice (Know The Ledge)" numerous times such that Johnson's voice becomes that of a third vocalist and the extent of the instrumental portion repeated in the Johnson Sample throughout the sound recording, renders Johnson another musician. The split sample is repeated at regular intervals, with two beats, four beats, then four beats. In total with the repetitions, the split sample makes up approximately twenty-five percent (25%) of the "Juice (Know The Ledge)" sound recording.

39. The pattern of the sampling methodology described above is similar to the pattern of music sampling that Eric B. and Rakim have utilized in other works. Bridgeport Music, Inc., v. UMG Recordings, Inc., et al., filed in the United States District Court Middle District of Tennessee, pertained to Eric B. and Rakim's sampling of another artists' work in their rap

12

Case 3:17-cv-01548   Document 1   Filed 12/12/17   Page 12 of 20 PageID #: 12

version of "I Know You Got Soul." The rap version in that case also included an unauthorized sample from Syl Johnson's work entitled "Different Strokes." According to deposition testimony concerning Rakim's sampling of another artist's music in the Bridgeport Music, Inc. case, Rakim described that the procedure he was directed to use when he composed music was that he wrote down the music samples used, the name of the artist and the name of the recording used, then turned it over to the record label.

40. The lyrics and portions copied from "I Feel An Urge" are distinct attractive components of "Juice (Know The Ledge)" and (Know The Ledge). In comparison to other rap/hip-hop songs, the Johnson Sample added to the "Juice" sound recordings produced a unique collage of musicality, lyrical content and rhythm structure.

41. Without the Johnson Sample, and the other artists' unauthorized sound recording samples (i.e., Nat Adderley and Billy Cobham), UMG's "Juice" sound recordings would be tantamount to violent poetry reading performances.

42. The lyrical content of UMG's' "Juice" sound recordings contains words and sentences that describe details of street life and criminal gang activity, including murders and aggravated battery. The lyrics also mention the idolization of historical war and crime figures. The lyrical content also includes the explicit, pejorative use of the word "n*ggers" three times throughout the duration of the "Juice" sound recordings. The original release of the song included an RIAA parental advisory warning of "Explicit Lyrics."

43. On December 31, 1991, the Soundtrack Album for the motion picture "Juice" was released by Soul Records, then a subsidiary of UMG's predecessor, MCA Records, Inc. Track No. 2 of the "Juice" Soundtrack Album is entitled "Juice (Know the Ledge)" by Eric B. and Rakim.

44. On information and belief, Eric B. Music and EMI Blackwood registered copyright PA0000559826 with the United States Copyright Office on March 9, 1992 for "Juice (Know The Ledge)," which appears on the Motion Picture Soundtrack Album "Juice" claiming authorship by " William Griffin" of the lyrics and the music. No credit was given to Plaintiff.

45. On approximately February 12, 1992, UMG's predecessor, MCA Records, Inc. registered SR 0000115363, the sound recording copyright with the United States Copyright Office for the song "Juice (Know the Ledge)." The Copyright Notice for "Juice (Know The Ledge)" a/k/a "Juice" failed to credit nor make any mention of either the misappropriated Johnson Sample (nor the other artists' samples) that make up virtually the entire instrumental portion of the "Juice" song.

46. UMG has a website for the licensing of their music and knows that samples of pre-1972 sound recordings must be credited to the correct artist and licensed. UMG was aware that Johnson's consent and a license to use the music for their "Juice" sound recordings should have been obtained.

47. UMG advances recording costs for its artists' recordings, then requires the artist to repay the recording costs from the artists' royalties. For "Juice," no substantial recording costs were incurred for the instrumental portion of the "Juice" sound recording.

## "JUICE" RECORDINGS RELEASED

48. Approximately seven months after the Soundtrack Album was released, UMG's predecessor, MCA Records, Inc. released an album entitled "Don't Sweat the Technique." Track No. 10 is entitled "Know the Ledge" and involves the same sound recording (with the exception of the "fade out" which omits the last 2-3 seconds) as the sound recording "Juice (Know the Ledge)" included as Track No. 2 on the Soundtrack Album. Track No. 10 of "Don't Sweat the Technique" album includes but does not credit the Johnson Sample. The CD label indicates that the record label is MCA Records, Inc. and the distribution company is Uni Distribution Corp.

14
Case 3:17-cv-01548    Document 1    Filed 12/12/17    Page 14 of 20 PageID #: 14

49. "Juice" was released on sound track for the 1991 Paramount Pictures motion picture "Juice" under the title of "Juice (Know the Ledge)." Rakim's performance of "Juice" was later released in 1992 as Track No. 10 in the album "Don't Sweat the Technique (1992); in "Rakim The 18th Letter The Book of Life" (1997); in "20th Century Masters: The Best of Eric B. & Rakim - The Millennium Collection" (2001), "Classic Eric B. & Rakim-The Universal Masters Collection" (2001); "Gold-Eric B. & Rakim", Track No. 19 (2005); More Fish-Ghostface Killah, Track No.1 "Ghost Is Back" - contains UMG authorized Juice sample); in Vegas – The Crystal Method; Track No. 2 "Busy Child" - contains UMG authorized Juice sample); Eric B & Rakim - "Icon" (2014). "Juice" was also released as a single by MCA Records, Inc. in 1992.

50. None of the above-listed releases and the released noted in Exhibit No. 1 of this complaint credit the Johnson Sample nor Johnson's work, "I Feel An Urge."

### Johnson's 2013 Discovery of His Music in "Juice"

51. UMG's' failure to credit the Johnson Sample on the "Juice" physical product that was being sold and distributed made Johnson's discovery of the unlawful conduct difficult. The Johnson Sample was recognizable by Johnson's distinctive voice. Therefore, unless Johnson happened to hear it or someone he knew happened to hear it and notify him, discovery was unlikely.

52. In approximately December 2013, Johnson met Matthew Clifford ("Clifford"). Johnson provided Clifford with a set of Johnson's recordings which Clifford took home and played. Clifford is a former D.J. and was familiar with the "Juice" sound recording. When Clifford listened to Johnson's recording of "I Feel An Urge," he immediately recognized Johnson's voice as the voice in the introductory hook in "Juice" and the third voice throughout

the "Juice" sound recording. The next day, Clifford informed Johnson that the "Juice" sound recording contains an uncleared sample from Johnson's sound recording, "I Feel An Urge." In 2013, Johnson also learned of the UMG's' sampling of another of Johnson's sound recordings, "I Know You Got Soul."

53. After discovery of the Johnson Sample on the "Juice" sound recordings, Johnson caused a package to be sent to Eric B. and an agent of Eric B., Uncle Louie Music Group, notifying them of his disputes with their sampling of his music. The package was refused and returned unopened. Johnson subsequently requested Clifford to assist with investigating the "Juice" sound recording, to purchase product, to attempt to determine the amount of sales and the record labels and distributors and gather other information so that a lawsuit could be filed.

54. Under Illinois' discovery rule, the statute of limitations is tolled until Johnson reasonably knew or should have known of his injury. The statute of limitations for the intentional tort of misappropriation is five years. Illinois law thus required that Johnson file a lawsuit within five years of December 2013, the time that Johnson discovered his injury. This lawsuit was filed on May 4, 2015 (United States District Court For The Northern District of Illinois Eastern District Case 1:15-cv-03928) approximately 1-1/2 years from Johnson's discovery, was timely filed and was dismissed without prejudice by Honorable Judge Amy St. Eve on January 4, 2017 for lack of Illinois jurisdiction. Plaintiff was directed to refile where the court has personal jurisdiction.

## COUNT I
## MISAPPROPRIATION

55. Johnson repeats, realleges and incorporates by reference Paragraph Nos. 1 through 54 as though fully set forth herein.

56. Rakim had a practice of compiling music for sound recordings by transferring

portions of other artists' sound recordings.

57. To compile the music for the UMG's' "Juice" sound recordings, Rakim, UMG's artist and agent, knowingly and intentionally transferred the above-described portions of Johnson's sound recording "I Feel An Urge" onto the Juice sound recording for the purpose of selling and participating in the distribution and dissemination of the UMG Juice sound recording for gain and profit.

58. A UPC Bar Code is a designation by which various Products that contain the Juice sound recordings are identified. Between 1991 and the current date, UMG have assigned at least 358 UPC Bar Codes for the commercial sale of Juice Products containing one of the Juice sound recordings.

59. Of these 358 bar codes, 102 bar codes have issued between 2010 and 2015 that contain one of the "Juice" sound recordings. Between 2016 and 2017, additional "Juice" products and bar codes have been released by Defendants that include and are not limited to the 2017 video game "NBA 2K18".

60. UMG has sold these the Juice Products for gain and profit.

61. On information and belief, UMG's conduct was intentional and willful because UMG thereby avoided the recording costs, including paying union musicians and avoiding paying Johnson for licensing of the Johnson Sample and avoided properly crediting Johnson for the contribution of the Johnson Sample to UMG's "Juice" sound recordings.

62. As a direct and proximate result of the intentional misappropriation described herein, Johnson has been damaged by the UMG sales of the "Juice" sound recordings in that no credit was given for use of the Johnson Sample and no licensing fee was paid for the Johnson Sample that UMG used for the Juice sound recordings.

17

Case 3:17-cv-01548   Document 1   Filed 12/12/17   Page 17 of 20 PageID #: 17

## Allegations Regarding Injunctive Relief

63. The injury to Johnson is ongoing. UMG continues to sell its physical Juice products in Illinois and Tennessee and to license the Juice products to other entities for online sales and to thereby derive licensing revenues. UMG refuses to give Johnson credit for the Johnson Sample. UMG refuses to pay Johnson for the Johnson Sample. UMG continues to enter into negotiated arrangements with other entities such as Take-Two Interactive Software, Inc. to obtain licensing revenues from the Juice Products containing the Johnson Sample.

64. Absent injunctive relief to enjoin any further sales of UMG's' sound recordings containing the Johnson Sample and to enjoin issuance of any further licenses of UMG's' sound recordings containing the Johnson Sample until UMG's negotiate a license with Johnson to use it, the tortious conduct and injury to Johnson will continue.

65. Johnson has no adequate remedy at law and money damages will not compensate Johnson for UMG's continuing unlawful conduct nor for UMG's refusal to give Johnson credit for the Johnson Sample.

66. The threatened harm is irreparable because: absent injunctive relief prohibiting UMG from any further sales of Juice Products until UMG give Johnson credit for the Johnson Sample taken from "I Feel An Urge," and compensate Johnson with a licensing fee for any further sales, Johnson has no other means of protecting his property rights in "I Feel An Urge" and because absent injunctive relief to enjoin UMG from any further tortious conduct as set forth herein, Johnson has no means to prevent the continuing violations of misappropriation and unjust enrichment.

67. The public interest is affected in that inclusion of the Johnson Sample in the Juice sound recordings without public acknowledgement of the Johnson Sample does not inform the

18
Case 3:17-cv-01548   Document 1   Filed 12/12/17   Page 18 of 20 PageID #: 18

public and other artists of Johnson's asserted property rights in the Johnson Sample.

68. The balance of the equities favors Johnson because UMG is only being ordered to refrain from tortious conduct (by providing credit for the Johnson Sample and paying a licensing fee), while Johnson is being subjected to continued tortious conduct with no means to prevent it.

**WHEREFORE, SYL JOHNSON A/K/A SYLVESTER THOMPSON**, Plaintiff herein, requests that this court enter judgment in his favor and against **UMG RECORDINGS, INC.**, a Delaware corporation and grant relief as follows:

a. compensatory damages in an amount as proved at trial;

b. punitive damages in an amount as may be proved at trial;

c. injunctive relief prohibiting UMG and all persons acting in concert with UMG from any further online or physical product sales of Juice Products in Illinois unless Johnson is paid a licensing fee and given credit for the Johnson Sample; and

d. for costs and fees as may be permitted by law and for such other and further relief as may be equitable and just.

## COUNT II
## INJUNCTIVE RELIEF

69. Johnson repeats, realleges and incorporates by reference Paragraph Nos. 1 through 68 as though fully set forth herein.

**WHEREFORE, SYL JOHNSON A/K/A SYLVESTER THOMPSON D/B/A SYL-ZEL MUSIC**, Plaintiff herein requests that this court enter an injunction against **UMG RECORDINGS, INC.**, a Delaware corporation, as set forth herein:

(1) Restraining, enjoining and prohibiting UMG Recordings, Inc., a Delaware corporation, from any further online or physical product sales of the "Juice" and "Know the Ledge" sound

recordings and any further issuance of licenses to any entity or person of the "Juice" and "Know the Ledge" sound recordings containing the Johnson Sample, until UMG obtains a license from Johnson and gives credit to Johnson and to his work "I Feel An Urge" for the Johnson Sample; and

(2) grant such other and further relief as may be equitable and just.

A jury trial is demanded as to all counts which may be tried to a jury.

SYL JOHNSON A/K/A SYLVESTER THOMPSON,
Pro Se Plaintiff herein

_Syl Johnson_ 12-1-17

Address: 3736 S. Calumet Ave.
Chicago, Illinois 60653
Phone: (312) 493-0172
Syljohnson3@aol.com